**DRUMMY et al. v. STERN et al.**

Court of Appeals of Kentucky.

June 11, 1954.

Ben L. Kessinger, Jr., Lexington, for appellants.

Kermin Fleming, Strother Kiser, Elwood Rosenbaum, David Weil, Breckinridge & Breckinridge, George D. Dorroh, Lexington, for appellees.

DUNCAN, Justice.

The judgment we are asked to review upholds the validity of six materialmen's liens in varying amounts in favor of appellees, I. H. Stern, Smith-Haggard Lumber Co., Inc., R. P. McDaniel, doing business as McDaniel Lumber Co., J. H. Middleton, Robert Weissinger, and W. T. Congleton Company.

Appellants, Mary Drummy and Sarah Mullen, doing business as Drummy-Mullen Mortgage and Development Company, contracted with A. E. Jaggie, doing business as Buildwell Construction Company, to construct two houses on lots 28 and 30, Block R, Unit 7 of the Meadows Subdivision to the City of Lexington. Title to lot

28 was in the appellants, Robert and Sarah Mullen, and title to lot 30 was in appellants, William and Mary Drummy. Jaggie defaulted in the payment of bills due appellees for labor and materials furnished in the construction of these houses. It is conceded that the materials and labor were furnished in each instance under contract with Jaggie alone.

The validity of the liens claimed by appellees Stern, Smith-Haggard Lumber Co., and McDaniel Lumber Co., turns upon the construction of the building contract under which Jaggie constructed the houses. If the contract created the relationship of joint venturers between the parties, Jaggie was an agent of the owners, and no notice to them was required by the provisions of KRS 376.010(3). If, on the other hand, Jaggie was an independent contractor, the liens must fail for failure of notice to the owners.

The contracts, identical as to each lot, were executed on a prepared form furnished by Sears-Roebuck Company, which had evidently been used by its customers engaged in building houses financed by FHA loans. By the terms, Jaggie agreed to build a house on each lot according to certain plans and specifications. The contractor was to furnish all labor, materials, and supervision required, for which the owners agreed to pay $5,500 for each house, payable in installments at varying stages of construction. Section 16 provides:

"Promptly upon completion of said building, or sooner if practicable, party of the first part shall offer said property for sale on the public market for the price of $9,500. When such sale is effected, and money paid by purchaser to party of the first part, all money remaining after building site, construction advances, fees and interest on construction money and legitimate cost of sale have been paid shall be declared profit, and divided as follows: Seventy per cent (70%) to the party of the first part, and thirty per cent (30%) to the Contractor, known as party of the second part."

A joint adventure is very similar to a partnership, the chief distinction being that a joint adventure is usually limited to a single transaction. As to each relationship, it is necessary that there be a sharing of the profits and losses. In the absence of an express agreement, the sharing of losses may sometimes be implied from an express agreement to share profits. A person does not become a member of a partnership or joint adventure by the mere fact that his compensation is measured by the amount of profits earned in the business. Blackerby v. Oder, 201 Ky. 403, 257 S.W. 43.

The same question based upon very similar facts was recently decided by this Court in Eline Realty Co. v. Foeman, Ky., 252 S.W.2d 15. In that case, Eline Realty Company entered into a written contract with Foeman by which he agreed to work for the company as sales manager and superintendent of construction in building houses and developing subdivisions. As part of the compensation for his services, Foeman was to receive one-half of the profits realized in the performance of these duties. There, after reviewing authorities from this and other states, we concluded that the contract did not create the relationship of joint venturers between the parties because there was no agreement, express or implied, for a sharing of the losses.

Turning to the contract before us, it admittedly contains no express provision for the sharing of losses. Nor do we think such an agreement can be implied from the contract as a whole. For example, if the houses could not have been sold for as much as $5,500, Jaggie would not have been required to pay back any of the contract price received by him. The loss would have fallen altogether on the owners. We think Jaggie was an independent contractor, and as such, he was not an agent of the appellants. In the absence of notice to the property owners, as required by KRS 376.010(3), the liens of Stern, Smith-Haggard Lumber Company and McDaniel Lumber Company were not perfected.

At the time of the transactions here involved, the statute required written notice to the property owners within thirty-five days after the last item of labor or material was furnished. The 1952 General Assembly subsequently increased the period to seventy-five days. Acts of 1952, Chapter 9.

 Appellee Weissinger, a plumbing contractor, gave written notice to the owners on October 4, 1950. The validity of his lien depends upon whether the last item of labor or material was furnished on August 30 or August 31, 1950. He installed the last material on August 30, and the plumbing inspector made a final inspection on the same day. On August 31, Weissinger removed the test plugs from the roof and basement and an air test machine which had been used in the plumbing inspection. The latter work required about an hour, for which a charge of $3.10 was made.

Appellee Middleton furnished the last labor and material in performance of his contract on August 28, 1950. On October 4, he filed a materialmen's lien statement with his pleading in which he asserted he had ceased to furnish materials in August, 1950. Subsequently in November, 1950, Orville Bowman, his employee, who then resided in the house on lot 30, changed the gas line in his house by special agreement with Middleton. This work was performed in his spare time at a cost of not more than $10. It was not performed as a part of the agreement between Jaggie and Middleton.

W. T. Congleton Company furnished its last material on August 25, 1950. It filed its lien statement on September 28, 1950. The president of the company testified that a letter was sent to the owners notifying them that they had filed a lien on September 28, 1950, and the last day on which materials were furnished was August 25, 1950. His counsel avowed that a copy of the letter would be filed and agreed that his testimony could be stricken from the record if he did not file it. A copy of the letter was never filed. One of the appellees admitted on cross-examination that she received a carbon copy of the lien that had been filed, but there is no evidence as to the date upon which this carbon copy was mailed or received by appellees. Although the evidence indicates that a notice was given, in the absence of the letter, we are unable to determine whether the notice was sent within the thirty-five day period.

We have consistently held that the time for giving notice cannot be prolonged by furnishing labor or material that is trivial and not necessary for the completion of the contract. Vogt v. Cannon Electric Co., 245 Ky. 766, 54 S.W.2d 338; Haynie v. Benton, Ky., 258 S.W.2d 488.

Applying this rule, we think the notice given by appellee Weissinger was in time. Although it may be said that the work performed on August 31 was trivial, it is not insisted that the work was not necessary. It admittedly was performed in good faith without a design to prolong the period within which notice should be given.

Obviously, the belated work performed by Middleton's employee in November, 1950, was no part of the work originally undertaken by Middleton and did not serve to prolong the time within which he was required to give notice to the property owners. Computed from August 25, 1950, his notice was not in time.

We have heretofore indicated that there is no evidence to indicate the date upon which notice was sent by W. T. Congleton Company. The burden of proving compliance with the statute was on the person claiming the lien, and in the absence of satisfactory evidence meeting the burden, the lien must fail.

The judgment is affirmed as to the appellee Weissinger and is reversed as to the claims of all other appellees.