**Gerald ROGERS, D/B/A Rogers Motors and Liberty Mutual Insurance Company, Appellants,**

**v.**

**Jim WHEELER and Betty Wheeler, Appellees.**

No. 92–SC–564–DG.

Supreme Court of Kentucky.

Sept. 30, 1993.

Max Hartz, McCarroll, Nunley & Hartz, Owensboro and David H. Vance, Frankfort, for appellants.

Dandridge F. Walton, Frankfort, amicus curiae, Kentucky Auto. Dealers Ass'n.

Henry E. Hayden, Hayden & McKown, Hartford, for appellees.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals sitting *en banc* which reversed and remanded a summary judgment of the Daviess Circuit Court in favor of Gerald Rogers, d/b/a Rogers Motors. The Court of Appeals held that Rogers was the titleholder of a motor vehicle sold to a purchaser, Thelma Daugherty, which was subsequently, involved in a collision with Jim and Betty Wheeler. Liberty Mutual Insurance Company is the insurer of Rogers under a garageman's liability policy. In a plurality opinion, the Court of Appeals determined that the sales scheme used by Rogers was a violation of the public policy of the state requiring insurance on all vehicles.

■ The issue in this case is whether from the standpoint of extending coverage under the garageman's liability policy, Rogers, a used car dealer, was the owner of the vehicle involved in a collision with an automobile occupied by Jim and Betty Wheeler and thus responsible for insurance coverage. In considering that question, the Court of Appeals found it necessary to interpret K.R.S. 186.-010(7) and various sections of K.R.S. Chapter 186A, as well as to overrule part of its decision in *Cowles v. Rogers,* Ky.App., 762 S.W.2d 414 (1988).

On January 8, 1988, Thelma Daugherty and her husband entered into an alleged conditional sales agreement with Rogers for the purchase of a 1975 Ford for $541.25. The Daughertys made a down-payment of $250 and agreed to pay the balance in weekly installments of $25. The contract provided that "if terms of this contract are broken, all money to be forfeited and car to be repossessed." In an effort to facilitate a potential repossession, Rogers did not transfer title of the vehicle to the Daughertys. When the car's license expired in March 1988, Rogers renewed the registration in his own name. Rogers did not advise the county clerk that he had "sold" the car to the Daughertys and

given possession to them. The county clerk, in reliance on the dealer's omnibus policy, K.R.S. 190.033, did not require proof of insurance. Thelma Daugherty did not have a driver's license to operate a motor vehicle on the date of the accident and did not have a license when she took possession of the Ford automobile in January. From the time she took possession of the vehicle until the date of the accident, she did not obtain any liability insurance.

Although the vehicle was to be paid in full in April 1988, the Daughertys fell behind in their payments and still owed a balance of $91.25 on June 5, 1988, when the Daugherty vehicle collided with the automobile occupied by Jim and Betty Wheeler, both of whom were seriously injured. Subsequently the Wheelers filed a lawsuit against Rogers and his insurance carrier. The Daviess Circuit Court entered a judgment for Rogers and Liberty Mutual Insurance Company on the basis of *Cowles, supra.* On further review, the Court of Appeals determined that Rogers was the owner of the vehicle and the scheme of Rogers was against public policy and remanded the case for further proceedings in the circuit court. This Court granted discretionary review.

The Court of Appeals was correct in deciding that the type of agreement entered into by Rogers and Daugherty was not the type of agreement consistent with K.R.S. 186.-010(7). The plurality opinion of the court and the concurring opinion of Judges McDonald and Johnson all agree that Rogers retained legal title and was the owner of the vehicle at the time of the accident. We also agree.

Kentucky is a certificate of title state since the adoption of K.R.S. 186.010(7). The public policy of Kentucky is set out in K.R.S. 304.39–010(1), as follows:

To require owners, registrants and operators of motor vehicles in the Commonwealth of Kentucky to procure insurance covering basic reparation benefits and legal liability arising out of ownership, operation or use of such motor vehicles.

The facts of this case are different from the *Cowles* situation. *Cowles* also involved a collision in which a vehicle sold by Rogers,

the same used car dealer as in this case, was being operated by an uninsured driver. In *Cowles*, the driver purchased the vehicle from Rogers, and pursuant to the oral agreement of the parties, Rogers retained title to the vehicle pending payment of a balance of $62 on the purchase price. The purchaser was involved in a collision one week later. The Court of Appeals concluded that the driver, not Rogers, was the owner of the automobile because there was not a valid conditional sale and thus the vehicle was not covered by the garageman's liability insurance.

Here Daugherty had been in possession of the 1975 Ford for 60 days when Rogers again renewed his registration of the vehicle without proof of insurance and without informing the county clerk that he had transferred possession of the vehicle to Daugherty.

In *Cowles*, the Court of Appeals did not consider the compulsory insurance law of Kentucky, what type of contract is necessary pursuant to K.R.S. 186.010(7) or what follows even if there is such a contract.

The distinct differences between this situation and *Cowles* can be found in 1) the fact that the only statute that *Cowles* considered was the licensing statute to determine who was the owner of a vehicle; 2) the fact that the court in *Cowles* never considered the relationship of the licensing statute to the compulsory insurance statute; 3) the fact that *Cowles* only involved property damage; 4) there was no exercise of control by the dealership in Cowles, such as the re-registration in this case; 5) public policy; 6) the agreement entered into by the dealership was contrary to Kentucky law; and 7) the scheme allowed the dealership to violate the insurance statutes, as well as the registration and licensing statutes.

It would appear that the scheme used by Rogers violated K.R.S. 186.190(2), which requires delivery of the current registration receipt and bill of sale; K.R.S. 186.200(2) which requires a bill of sale in quadruplicate to be delivered to the county clerk and K.R.S. 186.210 which requires that no person shall make a false statement in any application for registration. Rogers did not deliver a current registration receipt or a bill of sale.

He made an erroneous statement in his application in order to obtain registration without proof of insurance in violation of K.R.S. 186.021(2).

The type of arrangement between Rogers and Daugherty is not a conditional sales agreement as contemplated by K.R.S. 186.010(7). For purpose of liability insurance coverage, a literal application of this section's exception conflicts with statutory scheme.

The rationale for applying *Cowles* as an exception does not pertain in this case. Here Rogers had control of the vehicle and exercised that control to the extent of registering it in his name sixty days after he allegedly "sold" the vehicle to Daugherty. He exercised such control as to not only relicense the vehicle in his name, but also to warn Daugherty that he was not going to give her the plate until she brought her payments up-to-date. Rogers said he did not give her permission to drive the car. However, he did have control and exercised that control. Consequently Rogers must be considered the owner.

The failure of Rogers to comply with the licensing, registration and insurance statutes clearly makes him an owner and Mrs. Daugherty a permissive user.

Although we are not bound by the laws of other states, it is notable that other states, when presented with the question of whether the determination of "owner" conflicts with the public policy consideration such as compulsory insurance or safety inspections, have decided that they will not allow an entity or its insurance company to escape liability.

In construing the public policy under the South Carolina licensing and registration laws, the Federal District Court in *Clouse v. American Mutual Liability Insurance Co.*, 344 F.2d 18 (1965), held that the failure of the conditional vendor to comply with the statutes regarding title and certificate of insurance laws meant that the vehicle was being operated by the conditional vendee with the consent of the conditional vendor, and consequently the vehicle was covered under the omnibus clause of the vendor's garagekeeper's liability policy.

Iowa, in *Griffith v. Farm and City Insurance Co.*, 324 N.W.2d 327 (1982) held that usually an automobile dealer who sells a motor vehicle under a conditional or installment sales agreement is not considered the owner. However, when the dealer fails to comply with the statutes, such as motor vehicle inspection, then the seller is still considered to be the owner.

In a similar case involving safety, Iowa stated that when a car dealer sells an automobile without compliance with the inspection statutes, the dealer was still the owner and the purported buyer was a consent driver and thus covered under the seller's insurance. *Farm and City Insurance Co. v. U.S. Fidelity & Guaranty Co.*, 323 N.W.2d 259 (1982).

A similar conclusion was reached in Kansas where the seller of the automobile failed to comply with the transfer statutes and it was held the buyer was driving the automobile with the consent of the seller and consequently was covered by the seller's liability policy. *Maryland Casualty Co. v. American Family Group*, 199 Kans. 373, 429 P.2d 931 (1967).

The Court of Appeals' plurality and concurring opinions agree that such a selling arrangement would be against public policy. Such an arrangement, whether for less than one year or more than one year, was not of the nature envisioned by the General Assembly. As noted in the concurring opinion by Judge McDonald, the statutes are clear. Whether one pays cash for a vehicle or pays for the vehicle over time, be it one month or six months, the dealer must execute the necessary paperwork and deliver it to the buyer to complete the transfer of title. K.R.S. 186A.220(1) and (5); K.R.S. 186.190 and K.R.S. 186.200. K.R.S. 186.010(7) does not contemplate or authorize a conditional sale without transfer of title. The language used in the statute is intended to distinguish those leases which in reality are sales, or at the option of the lessee can be converted into a sale from a short term lease of less than 365 days with no right of purchase. Certainly conditional sales can be appropriate, but the vendor cannot disregard other statutes which are universal and compulsory in nature. To do so would be a clear disregard for the announced public policy of the State. The argument that the law of sales should determine the question of who is the owner in this type of situation is unconvincing. *Cf. Cowles.* The authorities for that proposition do not fully contemplate the Kentucky mandatory insurance law.

The facts in this case are critically important because after possession of the vehicle was delivered to Daugherty, Rogers went to the Clerk's office and registered the vehicle in order to relicense it in his own name. Rogers did not present proof of any insurance. The authorities cited by Rogers do not consider the compulsory insurance law because it was not in effect at the time these cases were decided.

This is not the type of case as found in *Motors Insurance Corp. v. Safeco Insurance Co. of America*, Ky., 412 S.W.2d 584 (1967). In that case, an accident occurred before the title papers had been fully executed and delivered. Here, there was no intention of transferring title until Rogers obtained all of his payment. *Motors Insurance, supra,* simply applied the general law under K.R.S. 355.2–201.

Kentucky specifically requires that any installment contract for a motor vehicle sale must be in writing. The statute describes the type of writing that has to be used for such a contract. The public policy is set out in K.R.S. 190.015 to the effect that it is necessary to regulate and license vehicle manufacturers, distributors and others in order to prevent fraud and other abuses upon the citizens of this state.

The motor vehicle registration system is more than merely regulatory. The licensing and registration statutes have been enacted to fulfill that purpose and to make sure that people cannot avoid such requirements by any selling scheme. K.R.S. 304.39–010(1).

Citation to *Hicks v. Kentucky Farm Bureau Mutual Insurance Co.*, Ky., 455 S.W.2d 52 (1970), is inappropriate because that case did not involve a scheme whereby title transfer would be withheld until all the money was paid. It was simply a situation where the sale had taken place, all the money had been

paid and because the clerk's office was closed, title could not be filed.

It should be noted that complying with the statutes established for licensing, registration and insurance does not create any additional burden on the dealer and should not be the occasion for the imposition of any additional charges.

■ When Rogers let Daugherty take the vehicle off the lot to see if she wanted to purchase it, he had a duty to determine if she had a valid driver's license. K.R.S. 186.620 provides that no person shall authorize or knowingly permit a motor vehicle owned or controlled by him to be driven by any person who has no legal right to drive. *Cf.* 7 Am. Jur.2d *Automobiles and Highway Traffic* § 651 provides in part that a dealer who places one of his vehicles in the hands of a prospective purchaser who he knows or in the exercise of reasonable care should know is incompetent to operate the vehicle safely is liable for injuries caused by the driver's incompetence. If Rogers wanted to exercise appropriate control of the vehicle, he had a responsibility to do more than withhold the license plates; he had the obligation to withhold the key to the motor. If Rogers had given the title to Daugherty as he is required to do, she would then have had to register the vehicle herself and show proof of insurance. Rogers could have easily protected himself by following the long established law of this Commonwealth.

Rogers' liability arises primarily from ownership, but any opportunity for exemption is totally vitiated by his violation of the statutes set out above. There is no question that this was never a valid conditional sale.

■ The decision of a plurality of the Court of Appeals that K.R.S. 186.010(7) authorizes a short-term conditional sale without transfer of title so long as the dealer insures the vehicle is reversed because it directly conflicts with K.R.S. 186A.220(5) which states:

> When he (any motor vehicle dealer) assigns the vehicle (one previously registered or purchased by dealer or accepted as trade) to a purchaser for use, he shall deliver the proper assigned certificate of title and a properly executed vehicle transaction record to such purchaser, who shall make application for registration and certificate of title thereon.

In light of the statute, the decision of the Court of Appeals to overrule that part of *Cowles* was in error.

The decision of the Court of Appeals that the scheme used by Rogers is against the public policy of the Commonwealth and would allow him to ignore the laws enacted by the General Assembly for the protection of all the citizens of the state is affirmed and this case is remanded to the circuit court for trial.

STEPHENS, C.J., and COMBS, REYNOLDS and SPAIN, JJ., concur.

LAMBERT and LEIBSON, JJ., concur in result only.