41 F.3d 1506
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In re Larry R. FARRIS; Irene D. Farris, Debtors.
Charles E. PEYTON, Interim Trustee, Plaintiff-Appellee
v.
Charles Ingram FARRIS, Defendant-Appellant.
 No. 93-6445.
 United States Court of Appeals, Sixth Circuit.
 Dec. 1, 1994.
 
 Before: MILBURN and DAUGHTREY, Circuit Judges; and WEIS, Senior Circuit Judge.*
 WEIS, Senior Circuit Judge.
 
 
 1
 In this bankruptcy appeal, the Trustee successfully avoided an alleged transfer of an inventory of used automobiles. However, we conclude that serious questions of fact and law remain unanswered and must be resolved before a definitive ruling in this case can be made. Consequently, we will vacate the judgment of the district court with instructions to remand this case to the bankruptcy judge for further proceedings.
 
 
 2
 Ingram Farris operated a used-car agency under the name "Farris Auto Sales" in Lebanon, Kentucky, until 1981. In that year, he retired and turned the operation and inventory over to his son Larry in exchange for notes in the amount of approximately $40,000. Ingram also leased the property on which the used-car lot was located to his son for a monthly rental of $400. Ingram then worked part-time for Larry as an employee.
 
 
 3
 During the period 1981 to 1987, Larry financed the purchases of used automobiles through local banks. In 1987, however, retail sales declined, and new arrangements became necessary. In the latter part of that year, the lease was terminated, (Ingram Test. at 31-34, 56, 101; Larry Test. at 79), and Ingram then became actively involved in the day-to-day management decisions of the dealership, although the license issued to Farris Auto Sales by the Commonwealth of Kentucky to sell used cars remained in Larry's name until January 1, 1990.
 
 
 4
 Beginning in 1987, Ingram purchased all the cars on the lot, but they continued to be titled in the name of Farris Auto Sales because used-car auctioneers could sell only to licensed dealers. The title certificates were kept on the premises in a box to which both Ingram and Larry had access.
 
 
 5
 Either man could execute the necessary documents in the event of a sale. However, when Larry sold a car, he was instructed to deliver the proceeds to Ingram who would then calculate the net profit derived from the sale by deducting the original purchase price and other expenses such as taxes and repairs incurred in connection with the particular vehicle. Ingram also deducted an amount to cover general business expenses and then would give part, or all, of the net profit to Larry.
 
 
 6
 Ingram paid the premiums for insurance on the inventory, and by the end of 1987, all the cars on the lot had been purchased by him. Although Larry filed income tax returns as the owner of Farris Auto Sales, he testified that he intended to have his father hold a security interest in the cars. (Larry Test. at 74).
 
 
 7
 In 1987 and 1988, Larry and an official of the Farmers National Bank prepared inventories showing Larry as the owner of the cars. However, at least by June 1989, the bank became aware that Ingram had become the sole purchaser of cars on the lot. Larry conceded that he was wrong in submitting those inventory schedules and said: "I am the one [who] should be punished." (Larry Test. at 48; see also Cambron Test. at 140-42). Farmers Bank was Larry's largest creditor, and the next three were other banks. (Larry Test. at 60-63). These debts were not secured.
 
 
 8
 Larry did not renew his license to sell cars after December 31, 1989, and Ingram succeeded him as licensee as of January 1, 1990, continuing to operate as Farris Auto Sales. In July 1990, Larry went to work for another dealership.
 
 
 9
 On September 5, 1990, Larry filed a petition for relief under Chapter 7 of the Bankruptcy Code. On January 22, 1991, the Trustee filed an adversary proceeding seeking to avoid an alleged preferential transfer of inventory from Larry to Ingram. According to the Trustee, the transfer occurred on January 1, 1990, when Larry's name on the license for Farris Auto Sales was replaced with that of Ingram.
 
 
 10
 The parties filed stipulations of fact, including two that read:
 
 
 11
 "SEVENTH STIPULATION.
 
 
 12
 Larry R. Farris was the sole owner of Farris Auto Sales from 1981 through December 31, 1989. Said Larry Farris conducted the used car business on premises owned by his father, Ingram Farris, at the West Main Street location in Lebanon, Kentucky from 1981 through 1989.
 
 
 13
 EIGHTH STIPULATION.
 
 
 14
 On January 1, 1990, Ingram Farris applied for and obtained a license to operate a used car business at said location and held for sale the entire inventory valued at cost in the sum of $49,995 for which he had provided all of the purchase funds and which inventory had been held for sale by Farris Auto Sales at the end of 1989."
 
 
 15
 After a hearing, the bankruptcy judge found that
 
 
 16
 "[d]espite attempts by the witnesses to characterize the operation as a different operation [after 1987], this Court finds that the only real difference in the operation is found in the fifth stipulation [that Ingram had purchased all of the cars in the inventory after 1987].... Clearly Ingram provided the financing, but what was equally clear to this Court was that from January, 1981, until January 1st, 1990, Larry was the owner of the business. According to the [seventh] stipulation, he was 'the sole owner.' ... [H]e maintained the only license for the business, and enjoyed the profits and he claimed ownership and the resulting tax benefits on his tax returns filed in 1987, 1988 and 1989."
 
 
 17
 The bankruptcy judge concluded that there had been a preferential transfer to Ingram and entered judgment against him in the amount of $49,995.10. In denying a motion to vacate the judgment, the bankruptcy judge relied on Cowles v. Rogers, 762 S.W.2d 414 (Ky.Ct.App.1988), which held that for automobile liability insurance purposes, ownership of an automobile under Kentucky law is governed by the certificate of title statute and not the law of sales.
 
 
 18
 Ingram then appealed to the district court. After receiving a recommendation prepared by a magistrate judge, the district judge, in a de novo review, affirmed the decision of the bankruptcy judge. The district court cited Hutchison v. C.I.T., Corp., 726 F.2d 300 (6th Cir.1984), for the proposition that perfection of a security interest by possession is permissible but that it "must be unequivocal, absolute and notorious, so that third parties may be advised." Id. at 302 (internal quotation omitted). After discussing the fact that both Ingram and Larry had access to the vehicles, certificates of title, and other necessary documents, the district court commented: "The men operated the business with the appearance of a joint venture."
 
 
 19
 Ingram has appealed, contending inter alia that he had perfected a security interest in the inventory through possession, that no transfer had occurred, and that the district court's reference of the case to the magistrate was improper.[1]
 
 I.
 
 20
 Section 547(b) of the Bankruptcy Code,[2] as read to include the factors pertinent to this case, enables a trustee to set aside a transfer as preferential if the following seven elements exist:
 
 
 21
 1. a transfer;
 
 
 22
 2. of property of the debtor;
 
 
 23
 3. to or for the benefit of a creditor;
 
 4. on account of an antecedent debt;[3]
 
 24
 5. was made while the debtor was insolvent;
 
 
 25
 6. within one year of the date of filing of the petition of bankruptcy; and
 
 
 26
 7. the transfer enabled the creditor to obtain more than he would have received under Chapter 7.
 
 
 27
 It is the trustee's burden to prove the elements of a preferential transfer. 11 U.S.C. Sec. 547(g).
 
 
 28
 The controversy in this case centers around the requirement of ownership by the debtor, Larry, and an alleged transfer by him to Ingram. The bankruptcy judge's decision rests on the premise that a change in the nature of possession of the inventory occurred on January 1, 1990 when Larry's license to sell cars at retail expired and a new one was issued in the name of Ingram.
 
 
 29
 The record on this score raises serious questions about whether a statutory transfer took place during the year preceding Larry's bankruptcy petition. If Ingram had a valid possessory lien in 1988 and 1989, then no change of possession occurred.
 
 
 30
 As noted earlier, the bankruptcy judge relied on Cowles v. Rogers, 762 S.W.2d 414 (Ky.Ct.App.1988). In that case, an automobile dealer delivered a car to a consumer who still owed $62 on the purchase price. The dealer retained the certificate of title pending final payment. While the purchaser was driving the car, he was involved in an accident, and the question arose as to whether the vehicle was covered by the dealer's liability policy. The Cowles court held that the provisions of the vehicle registration statute creating certificates of title "rather than the general law of sales, govern[s] the issue of who owns a motor vehicle for purposes of insurance coverage." Id. at 416-17.
 
 
 31
 The Supreme Court of Kentucky in Rogers v. Wheeler, 864 S.W.2d 892 (Ky.1993) recognized that Cowles was limited to the question of automobile insurance coverage and agreed that the law of sales should not govern the determination of ownership because it did "not fully contemplate the Kentucky mandatory insurance law." Id. at 895. To the same effect, see Potts v. Draper, 864 S.W.2d 896 (Ky.1993).
 
 
 32
 Those cases do not determine the issue before us. The question here does not involve ownership between a dealer and a consumer in the context of automobile liability insurance coverage. The dispute before us focuses instead on the rights of a creditor in a dealer's inventory, not the extension of liability insurance protection to dealership patrons.
 
 
 33
 In In re Bluegrass Ford-Mercury, Inc., 942 F.2d 381 (6th Cir.1991), we applied Kentucky's Uniform Commercial Code in resolving questions on the perfection of a security interest in a car dealer's inventory. We believe the same approach should be applied in the case at hand.
 
 
 34
 In Hutchison v. C.I.T. Corp., 726 F.2d 300 (6th Cir.1984), we discussed the perfection of a possessory lien on construction equipment. In that case, because the equipment had been placed on the property of a third party, the creditor was found not to be in possession. Hutchison leads us to conclude that under Kentucky law, a creditor may have a possessory lien in mobile equipment in some factual circumstances--particularly in those cases where the creditor owns the property upon which the equipment is located and takes exhaustive steps to personally assume control over the same.
 
 
 35
 That brings us to a consideration of the factual issues bearing on the lien claimed here. The notable distinction between Hutchison and the case before us is that here the vehicles were on property owned and in the possession and control of Ingram. The lease had terminated in 1987, and therefore, Larry seemingly had no right to remain on the property without the consent of Ingram. Although the record is silent on the point, we surmise that the sales lot might have had a sign advertising "Farris Auto Sales," a name prima facie as applicable to Ingram as to Larry. Under the circumstances here, it is somewhat puzzling as to what else Ingram could have done to make his possession more open, notorious, and complete.
 
 
 36
 Thus, there were circumstances that could put outside parties and creditors on notice that Ingram had an interest in the inventory.[4] The significance of the ownership of the sales lot was not discussed by the bankruptcy court, but it is a substantial factor bearing on the determination of whether a possessory security interest had been perfected.
 
 II.
 
 37
 Another related issue centers on the question of ownership of the automobiles. The bankruptcy judge did not elaborate but seemingly relied on the fact that the "business" was solely owned by Larry until January 1, 1990. That circumstance, however, does not establish ownership of the inventory. The fact that one owns a "business" does not necessarily extend ownership to inventory purchased by another enterprise. Although the certificates of title endorsed to "Farris Auto Sales" might create a prima facie case of ownership by that entity, other evidence in the case, too, must be considered. The record before us strongly suggests that after 1987, the only "business" that Larry owned was the bare license to sell automobiles to the public.
 
 
 38
 Larry no longer had control of the operation after 1987. All receipts from sales were delivered to Ingram who divided the profits. Larry was not permitted to take cars from the lot except for those which had been sold. Rather than a proprietor, Larry's status more closely resembled that of an employee of Ingram. Contrary to the finding of the bankruptcy court, therefore, the nature of Farris Auto Sales had changed quite substantially after 1987.
 
 
 39
 As the district court perceptively observed, the operation resembled, and may indeed have been, a joint venture or some species of partnership after 1987. This possibility was not raised before the bankruptcy judge and not urged on appeal. However, we may consider an issue not brought to the attention of the trial court when otherwise a plain miscarriage of justice would result.
 
 
 40
 In Hormel v. Helvering, 312 U.S. 552, 557 (1941), the Court said: "There may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court ... below." See also United States v. Edge, 989 F.2d 871, 876 (6th Cir.1993); 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Sec. 2588, at 749-50 (1971). In such circumstances, the appellate court can take cognizance of the issue and provide some guidance to the trial court on remand. See In re Caldwell, 851 F.2d 852, 858 (6th Cir.1988).
 
 
 41
 It is possible that a joint venture or a partnership existed between Ingram and Larry where the entity utilized the latter's license to legally sell used cars to the public. If indeed Larry and Ingram were engaged in a joint venture or partnership, then the inventory would have been an asset of that entity and not that of either Larry or Ingram individually.
 
 
 42
 For bankruptcy purposes, a partnership or joint venture is generally recognized as a separate and distinct entity from its partners. In re Newman, 875 F.2d 668, 670 (8th Cir.1989). Assets held as partnership property are not part of the estate of a bankrupt partner. In re Groff, 898 F.2d 1475, 1478 (10th Cir.1990); Newman, 875 F.2d at 670; In re Pentell, 777 F.2d 1281, 1285 (7th Cir.1985).
 
 
 43
 The nature and extent of partnership interests are determined by state law. Newman, 875 F.2d at 670. Under Kentucky law, a partner owns no specific interest in any specific property or asset of the partnership. Dreisbach v. Eifler, 764 S.W.2d 631, 633 (Ky.Ct.App.1988). A transfer of partnership property by a bankrupt partner does not constitute a voidable preference merely because the transferring partner held legal title. Alan R. Bromberg & Larry E. Ribstein, Bromberg and Ribstein on Partnership Sec. 1.03, at 1:24 (1988); see also Ralph C. Anzivino, Partner and Partnership Bankruptcy Sec. 3.11, at 67 (1987).
 
 
 44
 The Uniform Partnership Act, as adopted in Kentucky, Ky.Rev.Stat.Ann. Sec. 362.180(4) states: "The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business...." There is uncontradicted evidence in this case that Ingram and Larry shared profits from the sale of the automobiles.
 
 
 45
 In an early case, in Jones v. Nickell, 179 S.W.2d 195, 196 (Ky.1944), the court said that "[a] joint adventure is a special or limited partnership or partnership for a special purpose. Ordinarily it is an association for a particular transaction, while a partnership contemplates a continuing business." In Drummy v. Stern, 269 S.W.2d 198, 199 (Ky.1954), the court referred to the similarity between a partnership and a joint venture again, noting that usually the latter refers to a single transaction.
 
 
 46
 In more recent times, the distinction between partnerships and joint ventures has faded. In Groff, 898 F.2d at 1476, the Court remarked that "[d]elineating the activity level beyond which a joint venture becomes a partnership can be a challenging task...." Professors Reuschlein and Gregory in their Handbook on the Law of Agency and Partnership conclude that "[i]f a present legal trend can be identified, it is undoubtedly in the direction of consolidating joint ventures and partnerships, the names themselves being retained more for convenience and ensuring statutory compliance than for identification of distinct business relations." Harold G. Reuschlein & William A. Gregory, Handbook on the Law of Agency and Partnership Sec. 266, at 442-43 (1979) (footnote omitted).
 
 
 47
 We of course do not represent that our research on the issues presented by the record here is either complete or comprehensive. We intend only to point out some legal precepts that perhaps may be helpful in equitably resolving the issues presented in this case.
 
 
 48
 Because neither the parties nor the trial court focused on the ramifications of ownership that have occurred to us, it is necessary that the case be remanded to the bankruptcy judge. He may direct such further hearings and briefing as may be necessary to establish the nature of the relationship between the parties.[5]
 
 
 49
 Accordingly, the judgment of the district court will be vacated, and the case will be remanded to the district court with directions to remand to the bankruptcy judge for further proceedings consistent with this opinion.
 
 
 50
 Costs taxed against the Trustee.
 
 
 
 *
 Honorable Joseph F. Weis, Jr., Senior United States Circuit Judge for the Third Circuit sitting by designation
 
 
 [1]
 Because the district judge reviewed the matter de novo and treated the magistrate judge's recommendation as advisory only, we need not discuss whether the reference to the magistrate judge was proper. See Hall v. Vance, 887 F.2d 1041, 1046 (10th Cir.1989)
 
 
 [2]
 Because Ingram Farris was in sole possession of the used-car inventory on the date his son filed for relief in bankruptcy, he unquestionably had a perfected security interest sufficient to defeat a lien creditor as of that date. As such, the Trustee could not utilize his avoidance powers as a hypothetical lien creditor under 11 U.S.C. Sec. 544. See, e.g., General Elec. Credit Corp. v. Nardulli & Sons, Inc., 836 F.2d 184, 192 (3d Cir.1988) (trustee assumes position of hypothetical lien creditor on the date the debtor files for relief in bankruptcy); Ingersoll-Rand Fin. Corp. v. Nunley, 671 F.2d 842, 844 (4th Cir.1982) (same)
 
 
 [3]
 The bankruptcy judge's treatment of the antecedent debt provision is somewhat confusing. The inventory in possession of Ingram in 1990 had no relationship to the $40,000 in notes given by Larry in 1981. Ingram's claim is based on the monies he expended in the period from 1987 to 1990, not on the sale which occurred in 1981. In his findings, the bankruptcy court referred to "[t]he debt owed to Ingram was eight years old." J.A. at 108. As we understand it, Ingram was claiming only for the value of property he acquired after 1987
 
 
 [4]
 Indeed, Ingram's possession had become sufficiently notorious to make Farmers Bank wonder "who the inventory belonged to." (Test. of Cambron at 142)
 
 
 [5]
 Because of the disposition of this case, there is no need to address Ingram's alternative arguments