**In re CUNNINGHAM USED CARS, INC., Debtor.**

**SCT MOTOR CARS, INC., Plaintiff,**

v.

**AUTOMOTIVE FINANCE CORPORATION and Kentucky Transportation Cabinet, Department of Vehicle Regulation, Defendants.**

**Bankruptcy No. 94–20491.**
**Adv. No. 94–2041.**

United States Bankruptcy Court,
E.D. Kentucky,
Covington Division.

May 10, 1995.

Dennis R. Williams, Covington, KY, for plaintiff.

Taft A. McKinstry, Lexington, KY, for Automotive Finance Corp.

## MEMORANDUM OPINION

WILLIAM S. HOWARD, Bankruptcy Judge.

This matter is before the Court on the Motion for Summary Judgment filed by defendant Automotive Finance Corporation ("AFC") and the Cross–Motion for Summary Judgment filed by the plaintiff. AFC filed its Motion on January 31, 1995. The plaintiff filed a Response to AFC's Motion on February 14, 1995, and AFC filed a Reply to the plaintiff's Response on February 22, 1995. The plaintiff filed its Cross–Motion on March 6, 1995, along with a Supplemental Memorandum in Opposition to Motion for Summary Judgment. This matter was submitted for decision by order of this Court entered on March 31, 1995.

This action originated in Boone Circuit Court with the filing of a Complaint styled "SCT Motor Cars, Inc. v. ADE of Lexington, Inc., d/b/a ADESA–Lexington and Kentucky Department of Motor Vehicles" on July 28, 1994. Responsive pleadings were filed in that action, and then on August 31, 1994, defendant ADE of Lexington, d/b/a ADESA–Lexington ("ADE") removed the action to the United States District Court for the Eastern District of Kentucky at Covington.

Removal was based on the fact that the debtor herein was involved in the above-referenced action. ADE filed its Answer on September 13, 1994, and then moved for an Order of Reference on September 26, 1994. The U.S. District Court entered an Order of Reference on October 5, 1994, referring the matter to this Court. The parties have stated that this is a non-core proceeding, and they have consented to the entry of final orders or judgment by this Court.

ADE filed a Motion for Protective Order and a Motion to Dismiss on January 24, 1995, alleging that it neither had nor claimed any interest in the vehicle or title documents which are the subject of the plaintiff's Complaint, and that the plaintiff had amended its Complaint to name AFC as a party defendant. (At that point, the plaintiff had not yet amended its Complaint.). AFC filed its Answer on January 26, 1995. This Court entered an Order Dismissing Complaint Against ADE of Lexington, Inc. on March 1, 1995. The plaintiff also filed its Amended Complaint on March 1, 1995.

The matter in controversy herein is the ownership of a certain vehicle, a 1992 Chevrolet Lumina purchased by the debtor through ADE. The parties have not filed a Stipulation of Fact, but seem to agree upon certain facts. ADE is in the business of running vehicle auctions in several states including Kentucky. Defendant AFC is a wholly owned subsidiary of ADE, and is in the business of financing used automobiles for automobile dealers under floor plan programs within its market area. The debtor applied for and was approved for financing with AFC in March 1992. It executed several documents including a promissory note and security agreement in this regard. AFC perfected its security interest by filing its

Financing Statement with the Boone County Clerk's office on April 6, 1992.

The debtor purchased the Lumina through ADE on April 14, 1994. The seller assigned the title to the Lumina to the debtor pursuant to KRS 186A.220. The debtor financed the purchase price with AFC under its note and security agreement, and AFC forwarded the purchase price for the Lumina to ADE for payment to the seller. Pursuant to the debtor's Dealer Operating Agreement with AFC, physical possession of the title certificate was delivered to AFC. The debtor took possession of the Lumina and placed it for resale on its lot.

On April 17, 1994, the plaintiff entered into a Purchase Agreement with the debtor to purchase the Lumina for $8,350.00. The plaintiff paid the purchase price, and then agreed to sell the vehicle to Tri–City Motors, Inc. ("Tri–City"). The certificate of title to the vehicle was not delivered to plaintiff or Tri–City. Tri–City then delivered possession of the Lumina to AFC which liquidated it. The record does not indicate the circumstances or the reason for Tri–City's delivery of the Lumina to AFC. Tri–City did not pay the plaintiff for the Lumina.

The issue, as stated above, is the ownership of the subject vehicle. AFC contends in its Motion for Summary Judgment that the plaintiff cannot be the owner of the vehicle because it never obtained title from the debtor because physical possession of the title remained with AFC and no assignment to plaintiff was made. AFC's position is based on the requirements set forth in KRS Chapter 186A, and especially in KRS 186A.220. The plaintiff contends that despite the fact that it was never assigned a certificate of title it may still be considered the owner of the vehicle. The plaintiff argues that equitable considerations and provisions of the Uniform Commercial Code support its position.

AFC bases its argument to some extent on a line of Kentucky cases which deal with the question of the ownership of a vehicle in the context of liability insurance coverage. These cases include *Cowles v. Rogers*, 762 S.W.2d 414 (Ky.1988) and *Potts v. Draper*, 864 S.W.2d 896 (Ky.1993). The Court of Appeals in *Cowles* stated:

The initial issue we must address in this appeal is whether the legislature, by enacting KRS Chapter 186A, the automated motor vehicle registration and titling system, intended to prevent the absolute sale of an automobile from becoming legally effective until such time as the seller executes and delivers a certificate of title for the vehicle to the buyer.

. . . . .

Given the specific and mandatory nature of the provisions of KRS 186A.215(1) governing the transfer of vehicle titles, we conclude that the previous decisions of our courts applying the general laws of sales to determine who owns a motor vehicle for purposes of insurance coverage are no longer viable.... We hold, therefore, that since the effective date of KRS 186A, the provisions of that statute, rather than the general law of sales, govern the issue of who owns a motor vehicle for purposes of insurance coverage.

At pp. 415, 416–417.

The Supreme Court in *Potts* cited *Cowles* in holding that the provisions of KRS Chapter 186A govern "'... the issue of who owns a motor vehicle for the purposes of insurance coverage.'" The Court further stated that the case it was considering was "... not about a contract or sale or when such a transaction is complete, but rather it is about when title passes to buyer from seller for the purpose of liability insurance coverage." *Potts v. Draper*, at p. 899. See also *Guaranty National Insurance Co. v. Cain*, 851 F.Supp. 265 (E.D.Ky.1994). These cases, as well as *Rogers v. Wheeler*, 864 S.W.2d 892 (Ky.1993), all address the insurance aspects of transfer of ownership and are not necessarily dispositive in this instance.

As regards KRS 186A.220, that subsection provides in part:

(1) Except as otherwise provided in this chapter, when any motor vehicle dealer licensed in this state buys or accepts such a vehicle in trade, which has been previously registered or titled for use in this or another state, and which he holds for resale, he shall not be required to obtain a certificate of title for it, but shall, within

fifteen (15) days after acquiring such vehicle, notify the county clerk of the assignment of the motor vehicle to his dealership and pay the required transferor fee.

(2) Upon purchasing such a vehicle or accepting it in trade, the dealer shall obtain from his transferor, properly executed, all documents required by KRS 186A.215, to include the odometer disclosure statement thereon, together with a properly assigned certificate of title.

The plaintiff admittedly did not fulfill the requirements set out above. It argues however that this matter should be resolved pursuant to provisions of the Uniform Commercial Code ("UCC") which, it says, control over the Certificate of Title Act.

Specifically, the plaintiff maintains that as a buyer in the ordinary course of business ("BOCB"), it is entitled to have its interest in the vehicle determined under Article 9 of the UCC, without regard to certificate of title considerations. KRS 355.9–307(1) provides in pertinent part:

A buyer in ordinary course of business, ... takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

The plaintiff discusses at length its qualifications as a BOCB, as it is defined in KRS 355.1–201(9), including whether a merchant is eligible for such classification and which good faith standard must be applied. However, the plaintiff does not consider the basic question of whether it attained the status of buyer, or in the alternative, whether a sale had occurred.

In this regard, the question of whether transfer of title provisions govern the determination of whether a sale has occurred is considered at length in *In re Superior Ground Support, Inc.*, 140 B.R. 878 (Bkrtcy. W.D.Mich.1992). There the court applied the Michigan Vehicle Code which contains definitions and requirements similar to those found in KRS Chapters 186 and 186A, to determine that

... transfer of ownership in a motor vehicle must be accomplished in compliance with the vehicle code. A sale does not take place and a buyer emerge until the statutory duties have been performed. The vehicle code states clearly that the term 'owner' means, in relevant part, 'a person holding legal title of a vehicle.' ... This makes sense since no ownership rights are transferred by a void sale. (Cite omitted).

.    .    .    .    .

... the protection afforded to a buyer in the ordinary course of business of motor vehicles does not result without compliance with the Michigan vehicle code's provisions on the transfer of ownership.

At page 883.

This Court agrees with this interpretation and finds it applicable in this matter. Statutory duties concerning transfer of title were not performed, and therefore there was no sale completed by the debtor to the plaintiff. The automobile in question followed a tortuous route from one dealer to another, and the facts concerning some of the transfers are murky at best. However, two salient facts allow the Court to resolve this matter in AFC's favor: title to the vehicle was never transferred to the plaintiff, and AFC had a perfected security interest in it. AFC was justified in liquidating the vehicle to satisfy its security interest.

The initial burden of the movant for Summary Judgment is to show that there is no basis in the record for findings of facts that might determine a result of the case in favor of the non-movant. Such a showing would satisfy the movant's burden under Federal Rule of Civil Procedure 56(c) that there are no genuine issues as to any material fact. *In re Calisoff*, 92 B.R. 346 (Bkrtcy.N.D.Ill.1988), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, at 251, 106 S.Ct. 2505, at 2510, 91 L.Ed.2d 202, at 214.

The Court finds that the defendant Automotive Finance Corporation has satisfied its burden. The plaintiff, in its Response to Motion for Summary Judgment and its own Motion for Summary Judgment, does not set forth specific facts showing that there is a genuine issue for trial, as required by FRCP 56, in defense of the Motion for Summary Judgment. No genuine issue as to any mate-

rial fact having been presented, therefore, the defendant is entitled to judgment as a matter of law. An order in conformity with this opinion will be entered separately.