IN THE COURT OF APPEALS OF TENNESSEE

EASTERN SECTION

FILED

December 17, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | |
|---|---|
| ERNEST JAMES WAYLAND, | ) C/A NO. 03A01-9705-CV-00172 |
| | ) |
| Plaintiff-Appellant, | ) ANDERSON CIRCUIT |
| | ) |
| v. | ) HON. JAMES B. SCOTT, JR., |
| | ) JUDGE |
| CARL and LOLA PETERS, | ) |
| individually and d/b/a SCOTT COUNTY | ) |
| MOTORS, INC., a Kentucky | ) |
| Corporation, | ) REVERSED |
| | ) AND |
| Defendants-Appellees. | ) REMANDED |


BRUCE D. FOX, RIDENOUR, RIDENOUR & FOX, Clinton, for Plaintiff-Appellant.

DEBRA L. FULTON and ROBERT L. KAHN, FRANTZ, MCCONNELL & SEYMOUR, LLP, Knoxville, for Defendants-Appellees.


**O P I N I O N**


Franks, J.


Plaintiff alleged in his complaint that defendants did not comply with Kentucky statutes relative to titling and transferring motor vehicles, and the financial responsibility requirements in the State of Kentucky. Further, that defendants are required to know and follow the applicable laws relative to automobile dealers, and that the defendants in this matter ignored these laws and should be responsible to the plaintiff for damages as legal owner of the 1973 Buick involved in the collision with the plaintiff.

The Trial Judge ultimately granted defendant's motion for a summary judgment and plaintiff has appealed. The material facts are not in dispute.

Plaintiff essentially argues on appeal that Kentucky law is applicable to the facts of this case, and that under Kentucky law, plaintiff is entitled to recover damages from these defendants.

This case arose from an automobile accident that occurred in Anderson County, Tennessee, on November 2, 1989. A 1973 Buick, driven by Milton Downey collided with Plaintiff's vehicle. Downey was apparently intoxicated at the time of the accident and driving on the wrong side of the road. Plaintiff sued Downey and was awarded $750,000.00 in damages in the Circuit Court for Anderson County. Plaintiff then sued these defendants, and the record shows that Scott County Motors sold the 1973 Buick to Downey on August 22, 1989, but it did not obtain a certificate of title when it bought the car from Terry Darnell, the previous owner. Thus, it did not sign a certificate of title to Downey at the time of his purchase. Defendants made application for transfer of title from Darnell to Scott County Motors, and Scott County Motors to Downey on July 27, 1990.

Plaintiff insists that defendants' failure to transfer title properly meant they owned the vehicle on the date of the accident and were liable for damages for failure to comply with Kentucky law. This claim is based upon defendant's alleged violation of several Kentucky motor vehicle statutes concerning licensing and registration[1].

---

[1] K.R.S. §186A.220(1) states in part:
> [W]hen any motor vehicle dealer licensed in this state buys or accepts such a vehicle in trade, which has been previously registered or titled for use in this or another state, and which he holds for resale, he shall not be required to obtain a certificate of title for it, but shall, within fifteen (15) days after acquiring such vehicle, notify the county clerk of the assignment of the motor vehicle to his dealership and pay the required transfer fee.

Ky. Rev. Stat. Ann. §186A.220(1) (Banks-Baldwin 1996).

K.R.S. § 190.071(2) provides:
> Any motor vehicle dealer . . . who is found by the commission to have acquired a used motor vehicle for cash, trade-in, or in any other manner and fails to have the registration transferred to him prior to the time the vehicle is sold or otherwise transferred to another person shall be subject

As a preliminary issue to deciding which state law applies, it must be determined whether an actual conflict of law exists." *Seals v. Delta Air Lines, Inc.,* 924 F.Supp. 854, 859 (E.D. Tenn. 1996). In Tennessee, "the intention of the parties, not the certificate of title, determines the ownership of an automobile." *Smith v. Smith,* 650 S.W.2d 54, 56 (Tenn.App. 1983). Kentucky "is a certificate of title state for the purposes of determining ownership of a motor vehicle and requiring liability insurance coverage." *Potts v. Draper,* 864 S.W.2d 896, 898 (Ky. 1993); Ky. Rev. Stat. Ann. § 186A (Banks-Baldwin 1996). Generally, the titleholder is considered the owner of the vehicle in the absence of a valid conditional sale. *Potts,* 864 S.W.2d at 898; Ky. Rev. Stat. Ann. § 186.010(7) (Banks-Baldwin 1996). Kentucky has changed from "an equitable title state to a certificate of title state for the purposes of determining ownership of a motor vehicle for liability insurance purposes." *Potts,* 864 S.W.2d at 898. Kentucky courts have also held that an automobile dealer's failure to comply with licensing, registration and insurance statutes makes him an owner and the buyer a permissive user. *Rogers.v Wheeler,* 864 S.W.2d 892 (Ky. 1993). Under Kentucky law, Downey was not the titleholder on the date of the accident and therefore was not the owner. Accordingly, the laws of Kentucky and Tennessee are in conflict.

Tennessee has adopted the "most significant relationship" approach of § 6, 145, 146 and 175 of the Restatement (Second) of Conflict of Laws (1971), for resolving tort cases. *Hataway v. McKinley,* 830 S.W.2d 53 (Tenn. 1992).

Section 145, is the general provision dealing with tort cases and provides:

(1) The rights and liabilities of the parties with respect to an issue in

---

to suspension, fine, or revocation of his motor vehicle dealer's license.
Ky. Rev. Stat. Ann. §190.071(2) (Banks-Baldwin 1992).
K.R.S. § 186.190(2) states:
A person shall not purchase, sell, or trade any motor vehicle without delivering to the county clerk of the county in which the sale or trade is made the current registration receipt issued on the motor vehicle and bill of sale.
Ky. Rev. Stat. Ann. §186.190(2) (Banks-Baldwin 1994).

tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

§ 146, which specifically addresses personal injury cases, states:

In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Generally, the law of the state where the injury occurred will have the most significant relationship to the litigation. *Hataway*, 830 S.W.2d 53 at 59. In this case, although the injury occurred in Tennessee, Kentucky has a more significant relationship to the parties and events at issue.

In analyzing §145(2), it is improper merely to count contacts . *See Hataway*, 830 S.W.2d at 57. Rather, these contacts should be used to guide the analysis of the interest and policies to be considered under §6. While Tennessee is the place of injury, the place of injury is less important when it is "fortuitous." The Restatement does not define "fortuitous." The Comments, however, refer to situations when the place of injury is fortuitous "or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue." § 145(2) cmt. e. *Hataway* supports this proposition. Although *Hataway* did not define "fortuitous," it determined that the injury occurrence in Arkansas was "merely a fortuitous circumstance." 830 S.W.2d at 60.

Next, the parties dispute the location of the conduct causing the injury. The Appellant contends the conduct occurred in Kentucky because that is where the Appellees transferred possession of the car to Downey. Appellees maintain the conduct causing appellant's damages was the accident. In this case, the primary choice of law issue involves ownership of the automobile, and this conduct took place in Kentucky.

The Appellant is a Tennessee resident, and the appellees are Kentucky residents. The parties' domicile or residence will "usually carry little weight of itself".

4

Restatement (Second) of Conflict of Laws §145(2) cmt. e, unless all of the parties reside in a single state. *Id.* Although Tennessee is the place of the accident, Kentucky has the most significant relationship to the events at issue. Appellees acted in Kentucky and violated Kentucky statutes. Thus, it is not unfair to the appellees to apply Kentucky law to their actions. The Tennessee rule of ownership is based on our Court's interpretations of Tennessee statutes. Its application to events outside Tennessee is therefore less important. Kentucky has an interest in applying its laws regulating automobile sales which are made in Kentucky.

Generally, "the state whose interests are most deeply affected should have its local law applied." Restatement (Second) of Conflict of Laws §6(2) cmt. f. Kentucky is a certificate of title state for purposes of determining motor vehicle ownership and insurance obligations. *Potts v. Draper*, 864 S.W.2d 896, 898 (Ky. 1993); Ky. Rev. Stat. Ann. § 186A (Banks-Baldwin 1996). Kentucky law requires "the seller of a motor vehicle to take statutory steps to properly complete the sale and until this is done the seller will be considered the owner for purposes of liability insurance." *Potts*, 864 S.W.2d at 900. The effect of the rule is to insure "that all the public will be protected from uninsured motorists." *Id.*

In this case, the only person seeking protection from an uninsured motorist is the Appellant, a Tennessee resident. The *Potts* court noted the goal of the law is protecting "all the public". Kentucky also seeks to regulate the conduct of Kentucky automobile sellers.[2] Kentucky has an interest in assuring that local automobile dealers comply with the statute, thereby reducing the number of uninsured motorists on the road.

---

[2]K.R.S. § 190.015 states that the purpose of K.R.S. Chapter 190 (regulating motor vehicle sales) is to promote the public interest and public welfare and to prevent frauds, impositions and other abuses upon the citizens of Kentucky. Ky. Rev. Stat. Ann. § 190.015 (Banks-Baldwin 1982).

5

Kentucky courts have held that a motor vehicle dealer's failure to comply with a registration statute makes him the owner, and the purchaser a permissive user. *Rogers v. Wheeler*, 864 S.W.2d 892 (Ky. 1993). The purpose of this rule is to protect the public from uninsured motorists. *Potts*, 864 S.W.2d at 900.

Appellees argue that they were not the owners of the vehicle since they had not received title from Terry Darnell at the time of the accident. In Kentucky, however, a dealer can become the owner of an automobile without actually acquiring the title. *Hartford Accident & Indemnity Co. v Maddix*, 842 S.W.2d 871 (Ky.App. 1992); *See* K.R.S. § 186A.220. In *Maddix*, the court noted that, at the time of the accident, the dealer had done everything necessary to acquire ownership. 842 S.W.2d at 872. Specifically, he was within the fifteen day "window" of K.R.S. § 186A.220[3]. In this case, Appellees did not come within the fifteen day "window".

The primary purpose of the rule in *Rogers* and *Potts* is to protect the public by ensuring that the dealer's omnibus insurance policy will continue to cover vehicles when there has been an improper transfer of title. As a Kentucky Court has observed:

> "the significant changes brought about by the MVRA were aimed at a specific objective: to ensure continuous liability coverage in order to protect the victims of motor vehicle accidents, and to ensure that one who suffers a loss as the result of an automobile accident would have a source and means of recovery. *National Insurance Assoc. v Peach*, 926 S.W.2d 859 (Ky. App. 1996).

Kentucky courts have determined that "the MVRA is a social legislation

---

[3]K.R.S. §186A.220(1) states in part:
> [W]hen any motor vehicle dealer licensed in this state buys or accepts such a vehicle in trade, which has been previously registered or titled for use in this or another state, and which he holds for resale, he shall not be required to obtain a certificate of title for it, but shall, within fifteen (15) days after acquiring such vehicle, notify the county clerk of the assignment of the motor vehicle to his dealership and pay the required transfer fee.

Ky. Rev. Stat. Ann. §186A.220(1) (Banks-Baldwin 1996).

that must be liberally construed to accomplish these objectives. *Id.* (Citing *Beacon Ins. Co. Of America v. State Farm Mutual Ins. Co.*, 795 S.W.2d 62 (1990). Arguably, the most effective way to ensure that victims have a means of recovery is to hold that the owner is responsible for complying with the financial responsibility law for any accidents caused by the owned vehicle.

The Motor Vehicle Reparations Act ("MVRA"), was enacted to compensate accident victims promptly and without regard to fault. KRS 304.39-010(2). The first $10,000.00 worth of injuries, known as "basic reparation benefits" are paid without regard to fault. KRS 304.39-040(1). Generally, these benefits are paid by the victim's insurer. KRS 304.39-050(1). The victim's insurer, however, may seek subrogation from the insurer of the alleged tortfeasor. KRS 304.39-070(3). Thus, the MVRA abolishes tort liability only in the amount of basic reparations benefits and only between insureds. *Safeco Ins. Co. Of America v. Brown*, 887 F.Supp. 974 (W.D. Ky. 1995). Additionally, there is no limit on recovery for property damage.

Because the accident took place in Tennessee, the MVRA's limitations would not apply. K.R.S. § 304.39-060(2)(a) provides : "Tort liability with respect to accidents occurring *in this Commonwealth* and arising from the ownership, maintenance, or use of a motor vehicle is 'abolished' for damages because of bodily injury, sickness or disease to the extent the basic reparation benefits provided in this subtitle are payable therefor . . ." (emphasis added). Additionally, K.R.S. § 304.39-060(2)(c) states that "[t]ort liability is not so limited for injury to a person who is not an owner, operator, maintainer or user of a motor vehicle within subsection (1) of this section . . ." Subsection (1) provides : "[a]ny person who registers, operates, maintains or uses a motor vehicle on the public roadways of this Commonwealth shall, as a condition of such registration, operation, maintenance or use of such motor

7

vehicle and use of the public roadways, be deemed to have accepted the provisions of this subtitle . . ." There is also no evidence that the Appellant ever maintained or registered his car within Kentucky. Thus, the abolition of tort liability is inapplicable to the Appellant. The Sixth Circuit determined that it did not violate the Kentucky Constitution to apply the MVRA to bar a nonresident from recovering medical and hospital expenses arising from an automobile accident in Kentucky. *Russell v. Proffitt*, 765 F2d 72 (6th Cir. 1985). In the instant case, however, the accident occurred in Tennessee.

The only portion of the MVRA that significantly addresses out-of-state accidents is K.R.S. §304.39-030(2) which states:

> If the accident causing injury occurs outside this Commonwealth but within the United States, its territories and possessions, or Canada, the following persons and their survivors suffering loss from injury arising out of maintenance or use of a motor vehicle have a right to basic reparation benefits:
>
> (a) basic reparation insureds; and
> (b) the driver and other occupants of a secured vehicle who have not rejected the limitation upon their tort rights. . . .

This section is apparently designed to protect Kentucky residents when traveling out-of-state. Since the appellant is not insured under a policy covering a Kentucky vehicle, he is not a "basic reparation insured." K.R.S. §304.39-080(5) requires that owners maintain security for the payment of basic reparations benefits for vehicles operated in Kentucky or registered there. (Emphais supplied).

Finally, K.R.S. §446.070, states that:

> [a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation.

This statute affords the appellant an avenue of recovery for appellee's violation of the registration statutes. In order to prevail under this statute, however, a plaintiff must

8

demonstrate that the defendant's violation of the statute was the proximate cause of the damages sustained. *See generally, Real Estate Marketing, Inc. v. Franz, Ky.*, 885 S.W.2d 921(Ky. 1994). In this case, appellees argued the proximate cause of appellant's damages was Downey's consumption of alcohol and colliding with appellant, but appellees' failure to comply with the titling and registration statutes of Kentucky made it possible for Downey to have possession and operate the vehicle without having to comply with the financial responsibility law.

Although appellees did not have possession of the title at the time of the accident, they are owners under Kentucky law and Downey was a permissive user. The purpose of the Kentucky law is to protect the public by ensuring that a vehicle licensed by the state is insured.

We vacate the Trial Court's judgment and remand the Trial Court to determine to what extent the appellant was damaged by the failure of the appellees to comply with the statutes of Kentucky as detailed in this opinion.

The costs of the appeal are assessed to appellees.


_____
Herschel P. Franks, J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____
Clifford E. Sanders, J.